UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| SAMANTHA HUBBARD, <br><br> Plaintiff, <br><br> v. <br><br> STATE OF WASHINGTON DEPARTMENT OF CORRECTION, <br><br> Defendant. | CASE NO. 13-5982 RJB <br><br> ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

This matter comes before the Court on the Defendant State of Washington Department of Correction's ("DOC" or "State") Motion for Summary Judgment (Dkt. 85) and Plaintiff's motion for Oral Argument (Dkt. 87). The Court has considered the pleadings filed regarding the motions and the remaining file.

This employment case arises from the June 11, 2012 termination of Plaintiff's job with the DOC. Dkt. 1. The State now moves to summarily dismiss all Plaintiff's claims. Dkt. 85. For the reasons set forth below, the State's motion should be granted and the case dismissed.

ORDER ON DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT- 1

# I. BACKGROUND FACTS AND PROCEDURAL HISTORY

## A. BACKGROUND FACTS

On August 1, 2007, Plaintiff began working as a Classification Counselor 3 at Monroe Correctional Complex in Monroe, Washington. Dkt. 49, at 10. As a Classification Counselor 3, Plaintiff's job duties included meeting with, classifying, and managing offenders in the intensive management unit in order to place them in the least restrictive custody possible and to resolve other issues with them. Dkt. 49, at 10. She was required to complete reports on each offender every 180 days and do paperwork regarding informal reviews. *Id.* Her duties included working with community resources to promote offenders' successful re-entry and transition into the community. *Id.*, at 10-11.

On February 4, 2008, DOC wrote Plaintiff a "letter of concern" regarding over 34 hours of work time Plaintiff used to make calls on the State's telephone system "SCAN." Dkt. 51, at 13.

According to the State, Plaintiff's performance was not meeting expectations, and she was placed on a Performance and Development Plan in mid to late 2008. Dkt. 51, at 15. The plan was developed due to the timeliness of Plaintiff's reports and errors therein, and an increase in offender grievances regarding Plaintiff. *Id.* Concerns regarding Plaintiff's attendance were also raised. *Id.*

Plaintiff received a letter of reprimand on May 6, 2009, for failing to complete the essential functions of her job. Dkt. 51, at 21. DOC arranged for her to receive additional training to help address her performance issues. Dkt. 49, at 12-14.

In her Performance and Development Plan Evaluation, dated July 24, 2009, it was noted that her absenteeism was high (missing, on average, a minimum of one day a week), her

organization continued to be poor, her reports were still late and they contained several errors. Dkt. 51, at 26.

In August of 2009, Plaintiff filed a charge with the Equal Employment Opportunity Commission ("2009 EEOC charge") alleging that her then supervisor, Lisa Howe, discriminated against her due to her race and her daughter's disability and retaliated against her. Dkt. 48, at 22. The EEOC dismissed the charge on June 9, 2010, unable to conclude that the information it obtained established violations of the relevant statutes. Dkt. 48, at 24.

In October of 2009, Plaintiff was assigned to a new unit within the facility, and initially made improvement. Dkt. 51, at 31-36.

On October 25, 2010, Plaintiff received another letter of reprimand for excessive use of the State's telephone system (for several long distance calls) and inappropriate use of the internet. Dkt. 51, at 50. On December 9, 2010, she received a letter of reprimand for bringing an "empty prescription bottle of oxycodone," leaving it on the floor in her office (which was located in one of the prison's units) and for leaving her "institutional keys" on her office's desk. Dkt. 51, at 38.

In December 2011, the State notified Plaintiff that she was under investigation. Dkt. 48, at 26. She was interviewed several times about the allegations, which included: misuse of the State's telephone system and email system, improper use of sick leave to attend a personal court hearing regarding a fugitive warrant from Louisiana, inappropriate use of her DOC badge for a personal hearing in Pierce County, Washington Superior Court, and failing to pay for lunches in the staff lounge. Dkt. 48, at 41-44, and 46-51.

On March 6, 2012, Plaintiff's union filed a grievance on her behalf, alleging that the State violated a provision of the collective bargaining agreement when they took over 90 days to complete the investigation without seeking written authorization to extend the time frame. Dkt.

48, at 34-35.  A meeting between DOC and the union was held, and the union requested "a full make whole remedy, including a conclusion and resolution to the investigation." *Id.*  In response, DOC sent a letter to the union, explaining the reasons for the delay, and indicating that they were working on a final resolution.  *Id.*  The State indicated that Plaintiff would be notified of the results of the investigation as soon as possible.  *Id.*

On June 11, 2012, Plaintiff's employment was terminated.  Dkt. 51, at 41.  The termination letter lists the following misconduct as the basis for termination:

> 1.  During the period October 1, 2011, through December 31, 2011, you admitted that you used the State's Scan telephone system on multiple occasions for personal telephone calls.
> 2.  On December 23, 2011, you attended Pierce County Superior Court regarding your fugitive warrant out of Louisiana, after you submitted a leave request form on December 20, 2011, that requested Sick Leave on December 23, 2011, for the entire shift.
> 3.  You wore your Department of Corrections (DOC) badge to Pierce County Superior Court on December 23, 2011, for your personal hearing.
> 4.  During the period December 2011, through January 2012, you admitted you received personal e-mails on your DOC Outlook account on numerous occasions.
> 5.  You admitted to receiving correspondence from Office Assistant 3, Leslie Chu, on January 5, 2012, that was derogatory in nature regarding another staff person.
> 6.  During the period October 6, 2011 through November 15, 2011, you misappropriated state resources when you recorded coupon numbers on the Staff Lounge Receipt Log that had been purchased and used by other employees, and consumed lunches that you did not pay for on October 6, 7, 14, 18, 28, 2011; and November 2, 7, 10, 15, 16, 2011.
> 7.  You did not submit coupons for the lunches you consumed on October 13, 2011 and October 27, 2011.

Dkt. 50, at 41-42.

On June 13, 2012, Plaintiff's union filed a grievance on her behalf regarding her termination.  Dkt. 48, at 29.  The union withdrew that grievance "after a thorough investigation and review of the case" on January 8, 2013.  Dkt. 48, at 32.

1   On January 14, 2013, Plaintiff filed a charge with the EEOC alleging racial
2   discrimination and retaliation (for filing the 2009 EEOC charge) "in violation of Title VII of the
3   Civil Rights Act of 1964, as amended." Dkt. 48, at 37.  The EEOC dismissed the charge,
4   concluding that it was unable to find that the information obtained showed a statutory violation.
5   Dkt. 48, at 39.

6   **B.  PROCEDURAL HISTORY**

7   Plaintiff, acting *pro se*, filed her Complaint, entitled "Employment Discrimination
8   Complaint," on November 13, 2013.  Dkt. 1.  She alleges that she suffered disparate treatment due
9   to her race and that she was retaliated against because she filed a complaint with the EEOC.  Dkt.
10  1-1.  Plaintiff additionally references due process in connection with the termination of her
11  employment.  *Id.*  Plaintiff also filed an "Additional Statement of Facts," docketed as an Amended
12  Complaint, which references due process and the collective bargaining agreement and "wrongful
13  termination." Dkt. 13.  Much of Plaintiff's Complaint and subsequent "Additional Statement of
14  Facts"/Amended Complaint are difficult to decipher.

15  On October 14, 2014, Defendant filed a motion for summary dismissal of all Plaintiff's
16  claims.  Dkt. 46.  Plaintiff opposed Defendant's motion and cross moved for summary judgment.
17  Dkt. 64.  She included several pages of attachments.  *Id.,* at 35-57.

18  On December 1, 2014, the DOC's motion was granted and Plaintiff's discrimination and
19  retaliation claims were dismissed for failure to exhaust her administrative remedies because
20  Plaintiff failed to file her EEOC charge within 180 days of her termination.  Dkt. 66.  Further,
21  her due process claim was dismissed because she failed to point to any evidence that her
22  collective bargaining agreement with the State did not contain grievance procedures that satisfy
23  due process.  *Id.*  Her claim for violation of the collective bargaining agreement was dismissed
24

ORDER ON DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT- 5

because Plaintiff failed to point to violation of any particular provision or show damages. *Id.* To the extent that Plaintiff asserted a claim for wrongful termination under state law for violations of the collective bargaining agreement, her claim was dismissed because the claim was preempted by Section 301 of the Labor Management Relations Act. *Id.* Plaintiff's cross motion for summary judgment was denied. *Id.*

Plaintiff appealed the dismissal of her case to the Ninth Circuit Court of Appeals. Dkt. 70.

On June 8, 2015, the Ninth Circuit issued its opinion, which provides in full:

> A review of the record and appellee's April 9, 2015 'motion to withdraw defense' demonstrates that the district court's grant of summary judgment on appellant's Title VII claims was in error.
> Accordingly, the district court's order granting summary judgment on appellant's Title VII claims is vacated, and the appeal is remanded to the district court for further proceedings consistent with this order.

Dkt. 77 (*citing* 42 U.S.C. § 2000e-5(e)(1)(where the plaintiff 'has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice' a charge must be filed 'within three hundred days after the alleged unlawful employment practice occurred')(*remaining citations omitted*)). (The DOC conceded in its 9th Circuit briefing that Plaintiff filed her 2013 EEOC charge within 300 days of her termination. Dkt. 85, at 8). The mandate issued on July 2, 2015. Dkt. 78.

In July and August of 2015, the parties were ordered to, and did, file a joint status report. Dkts. 79 and 80. A new scheduling order was issued: the discovery deadline was November 9, 2015 and trial is set to begin on March 7, 2016. Dkt. 81.

Defendant again moves for summary dismissal of Plaintiff's claims. Dkts. 85 and 88. It argues that Plaintiff's claims for discrimination should be dismissed because she cannot make the requisite showing under the *prima facia* case, that it had legitimate non-discriminatory reasons

1   for terminating Plaintiff's employment, and that she cannot show that Defendant's proffered

2   reasons are a pretext for discrimination. *Id.* Defendant moves for dismissal of Plaintiff's

3   retaliation claim, arguing that Plaintiff cannot show a causal link between her 2009 EEOC

4   charge and her 2012 termination. *Id.* Defendant points out that based on the Ninth Circuit Court

5   of Appeal's Order, Plaintiff's previous claims regarding the collective bargaining agreement and

6   for wrongful termination remain dismissed. *Id.,* at 8.

7       The same day Defendant filed its motion for summary judgment, it filed a dispositive

8   motion notice. Dkt. 86. This notice warned Plaintiff, as a *pro se*, that Defendant had filed a

9   dipositive motion and explained what she needed to do to if she intended to oppose the motion.

10  Dkt. 86. The notice also made clear that if the motion was granted, her case would be dismissed.

11  *Id.*

12      Plaintiff filed an opposition to the Defendant's motion, arguing that she was "wrongful

13  [sic] terminated on June 12, 2012 from Department of Correction position as CC3, her job was

14  then given to a white male because Sally Neiland demoted Superintendent wanted a white person

15  in position investigation started 11/2011 ended 06/12/2012 going beyond 90 day time frame."

16  Dkt. 87. Plaintiff "deputes [sic] misconduct was found" and has the "documentation to produces in

17  hearing." *Id.*, at 2. She maintains that the lead investigator in her case, Sally Neiland, was

18  demoted from Superintendent "due to misconduct for falsifying documents along with a laundry

19  list of other misconducts [sic]" less than a year after Plaintiff was discharged. *Id.* Plaintiff points

20  out that Defendant's investigation took longer than 90 days and it did not request an extension

21  under the collective bargaining agreement. *Id.* Plaintiff maintains that "this voids out the entire

22  investigation." *Id.,* at 4. Plaintiff also contests some of the reasons given for her discharge in the

23  termination letter. *Id.* She argues that she was "terminated base [sic] on a White female staff

24

ORDER ON DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT- 7

1  sending plaintiff an email calling another staff "Stan." *Id.,* at 5.  She then asserts that "white female

2  staff never received write up for said email." *Id.*  She argues that DOC did not produce a policy

3  that an employee can't use sick leave for court appearances, she used the only leave she had for

4  her court appearance, and that her supervisor at the time knew where she was going.  *Id.*

5  Plaintiff maintains that the Defendant relied on false statements from "Deputy Stanley of Pierce

6  County Court," in which he stated that "Plaintiff wore DOC badge, and misrepresented her position

7  with DOC." *Id.*  She asserts that the court transcript proves that the deputy lied.  *Id.* Plaintiff

8  lastly states: "Defendant alleges plaintiff ate lunch without paying, however email from union rep

9  Mark Manning July 25, 2012 he found that Sally Neiland had falsify documents concerning

10 lunch tickets plaintiff has email stating these facts." *Id.*

11     Defendant replied and argues that Plaintiff's Title VII claims should be dismissed.  Dkt.

12 88.  It argues that to the extent that Plaintiff attempts to reassert her claims regarding the

13 collective bargaining agreement or for wrongful termination, those claims should remain

14 dismissed as provided in this Court's December 1, 2014 order granting the Defendant's motion for

15 summary judgment and denying Plaintiff's cross motion (Dkt. 66).  *Id.*

16                              **II.     DISCUSSION**

17    **A. PLAINTIFF'S MOTION FOR ORAL ARGUMENT**

18     Pursuant to Local Rule W.D. Wash. 7(b)(4) "[u]nless otherwise ordered by the court, all

19 motions will be decided by the court without oral argument."

20     Oral argument was requested by Plaintiff.  Dkt. 87.  The motion should be denied.  It is not

21 necessary for the Court to decide the Defendant's motion.  Plaintiff indicates that she has

22 evidence that she would present at oral argument.  Dkt. 87, at 2.  Plaintiff has been repeatedly

23 warned that in order to oppose a motion for summary judgment, she needs to file evidence in the

24

1  record, as she did when she opposed Defendant's first motion for summary judgment. Plaintiff
2  has not shown that she needs to have oral argument to present this evidence.

### B. SUMMARY JUDGMENT STANDARD

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the non moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)(nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed.R.Civ.P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 .S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial– e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254, T.W. *Elect. Service Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will

discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*). Conclusory, non specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

## C. CLAIM FOR DISCRIMINATION UNDER TITLE VII

Under Title VII of the Civil Rights Act of 1964, it is unlawful "for an employer–(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. §2000e-2(a)(1).

The plaintiff in a Title VII claim must carry the initial burden under the statute of establishing a *prima facie* case of racial discrimination. *Vasquez v. Cty. of Los Angeles*, 349 F.3d 634, 640 (9th Cir. 2003), *as amended* (Jan. 2, 2004). For a *prima facie* case, a plaintiff "must offer evidence that gives rise to an inference of unlawful discrimination," either through the framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) or "with direct or circumstantial evidence of discriminatory intent." *Id.*(*internal quotations and citations omitted*).

Plaintiff has not offered direct or circumstantial evidence of discriminatory intent, so the *McDonnell Douglas* framework applies.

Under this framework, a plaintiff must establish that: (1) they belong to a protected class, (2) they were qualified for the position (they were performing their job in a satisfactory manner), (3) they were subjected to an adverse employment action, and (4) they were replaced by or were treated less favorably than a person outside the protected class. S*ee McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If plaintiff meets the burden of establishing a *prima facie* case,

the employer must produce a legitimate, nondiscriminatory explanation for the adverse employment action. *Id*. The ultimate burden then shifts back to the plaintiff to prove that the defendant's stated reasons are in fact pretext. *Id*. at 804.

### 1. Plaintiff Has Not Established Her *Prima Facie* Case

Plaintiff, as an African American, is a member of a protected class. Further, she was terminated and so, was subject to an adverse employment action. She has met her burden on the first and third elements of the *prima facie* case.

As to the second element of the *prima facie* case, Plaintiff has not demonstrated that she was performing her job in a satisfactory manner. During the time Plaintiff worked for the DOC, she received several letters of reprimand and was, at times, on performance improvement plans. She offers no evidence or argument to the contrary.

The fourth element of the *prima facie* case–that Plaintiff was replaced by or was treated less favorably than a person outside the protected class–is also not met. Plaintiff alleges, but offers no evidence to prove, that she was replaced by a white man. Plaintiff fails to cite to any evidence in the record to support this assertion other than her own self-serving statements. Plaintiff's self-serving statements alone are inadequate to defeat summary judgment. *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 n. 6 (9th Cir.2006).

Defendants argue that Plaintiff cannot show that a similarly situated non-African American received more favorable treatment. Dkt. 85. In her response, Plaintiff references Sally Neiland, a former Superintendent of MCC's Twin Rivers Unit, who was demoted. Dkt. 87. She also refers to another unnamed female employee who Plaintiff argues was not punished for sending the email Plaintiff was, in part, terminated over. *Id.* To the extent that Plaintiff references Ms. Neiland as a comparator, Plaintiff fails to show that they are similarly situated. In

1  order to be similarly situated, the plaintiff and his proposed comparator must have engaged in

2  acts of "comparable seriousness." *Clayton v. Meijer*, 281 F.3d 605, 611 (6th Cir. 2002). Plaintiff

3  makes no such showing here.  They held different jobs and are alleged to have engaged in

4  different acts of misconduct.  To the extent that Plaintiff references this unnamed female

5  employee who sent the email at issue, as a comparator, Plaintiff fails to show that they are

6  similarly situated.  She fails to point to any evidence as to whether this woman had a similar job

7  or disciplinary history.  Plaintiff asserts, but does not show, that this woman was not

8  reprimanded as well. Plaintiff's assertions are not sufficient at the summary judgment stage on

9  this issue.  Plaintiff has not shown that a similarly situated non-African American received more

10 favorable treatment.

11       Plaintiff's discrimination claim should be dismissed.  Plaintiff failed to point to any

12 evidence in the record that she was performing her job satisfactorily, that she was replaced by a

13 person outside her protected class, or that comparable non-African American people were treated

14 more favorably.

15       Even assuming that Plaintiff makes a *prima facia* case, her race discrimination claim

16 should still be dismissed upon review of the other two *McDonnell Douglas* steps.

17           2.  Defendant's Explanation

18       In the second step of the *McDonnell Douglas* test, if the plaintiff succeeds in proving the

19 *prima facie* case, the burden shifts to the defendant to articulate some legitimate, non-

20 discriminatory reason for the adverse employment action.  *Id*.

21       Defendant offers a non-discriminatory reason for Plaintiff's firing–her disciplinary

22 history.  Dkt. 85.  For example, Plaintiff's termination letter lists several instances of misconduct.

23 They were:

24

1. During the period October 1, 2011, through December 31, 2011, you admitted that you used the State's Scan telephone system on multiple occasions for personal telephone calls.
2. On December 23, 2011, you attended Pierce County Superior Court regarding your fugitive warrant out of Louisiana, after you submitted a leave request form on December 20, 2011, that requested Sick Leave on December 23, 2011, for the entire shift.
3. You wore your Department of Corrections (DOC) badge to Pierce County Superior Court on December 23, 2011, for your personal hearing.
4. During the period December 2011, through January 2012, you admitted you received personal e-mails on your DOC Outlook account on numerous occasions.
5. You admitted to receiving correspondence from Office Assistant 3, Leslie Chu, on January 5, 2012, that was derogatory in nature regarding another staff person.
6. During-the period October 6, 2011 through November 15, 2011, you misappropriated state resources when you recorded coupon numbers on the Staff Lounge Receipt Log that had been purchased and used by other employees, and consumed lunches that you did not pay for on October 6, 7, 14, 18, 28, 2011; and November 2, 7, 10, 15, 16, 2011.
7. You did not submit coupons for the lunches you consumed on October 13, 2011 and October 27, 2011.

Dkt. 50, at 41-42. Accordingly, Defendant has offered legitimate, nondiscriminatory reasons for Plaintiff's termination, and so has met its obligation under the test.

### 3. Plaintiff Has Not Shown Pretext

In the last step of the *McDonnell Douglas* test, "should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *McDonnell Douglas* at 802. "A plaintiff can show pretext directly, by showing that discrimination more likely motivated the employer, or indirectly, by showing that the employer's explanation is unworthy of credence." *Vasquez*, at 641.

Plaintiff makes no direct showing that "discrimination more than likely motivated" the DOC. *Id.* She attacks some of the items listed in the termination letter. Dkt. 87. To the extent

ORDER ON DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT- 13

that she intends these arguments to show that DOC's explanation of her termination is "unworthy of credence," *Vasquez*, at 641, they should not prevail.

To the extent that Plaintiff attacks DOC's reason number two in the termination letter by arguing that DOC did not produce a policy that an employee can't use sick leave for court appearances, she used the only leave she had for her court appearance, and that her supervisor at the time knew where she was going, her arguments are not persuasive to show that Defendant's explanation is "unworthy of credence." Dkt. 87, at 5. Plaintiff has the burden at this stage to produce evidence, not Defendant. Plaintiff failed to produce any evidence to support her assertions.

Plaintiff further maintains that the Defendant relied on false statements from "Deputy Stanley of Pierce County Court," in which he stated that "Plaintiff wore DOC badge, and misrepresented her position with DOC." Dkt. 87, at 5. She asserts that the court transcript proves that the deputy lied. *Id.* This also does not give rise to an inference of discrimination. Plaintiff again does not point to any evidence to support her assertions. Plaintiff does not show that even if the deputy lied, the Defendant knowingly relied on a false statement.

Plaintiff argues that she was "terminated base [sic] on a White female staff sending plaintiff an email calling another staff 'Stan.'" Dkt. 87, at 5. She then asserts that "white female staff never received write up for said email." *Id.* To the extent that Plaintiff raises this argument to show that DOC's explanation of firing her for the reasons is "unworthy of credence," *Vasquez*, at 641, Plaintiff offers no proof in support of her allegations.

Plaintiff lastly states: "Defendant alleges plaintiff ate lunch without paying, however email from union rep Mark Manning July 25, 2012 he found that Sally Neiland had falsify documents concerning lunch tickets plaintiff has email stating these facts." *Id.* Plaintiff points to no

evidence from which to draw this conclusion, however. "A district court has no independent duty to scour the record in search of a genuine issue of triable fact, and may rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment." *Simmons v. Navajo County, Ariz.,* 609 F.3d 1011, 1017 (9th Cir. 2010)(*internal citations omitted*). District courts are under no obligation to undertake a cumbersome review of the record on the nonmoving party's behalf. *Id.*

Plaintiff has not produced evidence of pretext. Plaintiff has failed to demonstrate by competent evidence that the presumptively valid reasons "for her termination was in fact a cover up for a racially discriminatory decision." 411 U.S. at 805. Plaintiff's race discrimination claim should be dismissed.

### D.  CLAIM FOR RETALIATION UNDER TITLE VII

To establish a retaliation claim under Title VII, "a plaintiff must show (1) involvement in a protected activity, (2) an adverse employment action and (3) a causal link between the two." *Brooks v. City of San Mateo,* 229 F.3d 917, 928 (9th Cir. 2000) (*citing Payne v. Norwest Corp.*, 113 F.3d 1079 (9th Cir.1997)). At that point, "the burden of production shifts to the employer to present legitimate reasons for the adverse employment action. Once the employer carries this burden, plaintiff must demonstrate a genuine issue of material fact as to whether the reason advanced by the employer was a pretext. Only then does the case proceed beyond the summary judgment stage." *Id.*

Defendant's motion to summarily dismiss Plaintiff's retaliation claim should be granted. Plaintiff has shown that she engaged in a protected activity–the filing of a complaint with the EEOC on August 28, 2009 and that she suffered an adverse employment action–she was terminated on June 11, 2012. The first two factors are met.

As to the third factor, Plaintiff has failed to show a causal link between the two. While the court may infer causation based on the "proximity in time between the protected action and the allegedly retaliatory employment decision, such an inference is not possible in this case" because almost three years lapsed between the date of the EEOC complaint and Plaintiff's discharge. *Manatt v. Bank of Am., NA*, 339 F.3d 792, 802 (9th Cir. 2003)(*internal citations omitted*)(holding that the nine month lapse between the date of Plaintiff's protected activity and the employer's alleged retaliatory adverse decisions was too long to infer causation). Plaintiff demonstrates no causal nexus between her EEOC complaint and her termination.

Moreover, even if Plaintiff had met her burden, Defendants proffered reason for Plaintiff's termination–her disciplinary history - is a legitimate non-discriminatory reason. *See Brooks,* at 928.

Plaintiff points to no evidence which demonstrates that there is a genuine issue of material fact as to whether the reason advanced by the employer was a pretext. Plaintiff's assertions that the DOC's reasons for firing her are not credible do not meet her burden. "Merely denying the credibility of the employer's proffered reasons is insufficient to withstand summary judgment." *Munoz v. Mabus*, 630 F.3d 856, 865 (9th Cir. 2010) (*citing Lindsey v. Shalmy,* 29 F.3d 1382, 1385 (9th Cir. 1994)). Plaintiff's retaliation claim should be dismissed.

### E.  VIOLATION OF COLLECTIVE BARGAINING AGREEMENT

To the extent that Plaintiff again asserts claims for violation of the collective bargaining agreement, this claim should remain dismissed. This claim was dismissed in the December 1, 2014 order, which provided in regard to this claim:

> The State's motion to summarily dismiss Plaintiff's claims for violation of the Collective Bargaining Agreement (Dkt. 46) should be granted. To the extent that Plaintiff makes a motion for summary relief on her claim for violation of the Collective Bargaining Agreement (Dkt. 64), it should be denied.

> To the extent that Plaintiff argues generally that the Collective Bargaining Agreement was violated, she fails to point to any particular provision that was violated, except the provision that requires that investigations be conducted in 90 days. She acknowledges, however, that her union grieved the issue. She does not point to any evidence that she was damaged as a result of the alleged violation or that she did not receive the relief she requested. The claim should be dismissed.

Dkt. 66. The Ninth Circuit did not address the dismissal of this claim. The claim should remain dismissed for the reasons provided in the December 1, 2014 order. To the extent that Plaintiff argues that a violation of the collective bargaining agreement "voids out the entire investigation." Dkt. 87, at 4, she points to no legal authority for this supposition or any evidence to support her claim. This claim should remain dismissed.

### F.  WRONGFUL TERMINATION

The claim should remain dismissed for the reasons provided in the December 1, 2014 order. Dkt. 66.

### G.  CONCLUSION

The State's Motion for Summary for Summary Judgment (Dkt. 85) should be granted. Plaintiff's Motion for Oral Argument (Dkt. 87) should be denied. All Plaintiff's claims are now dismissed and this case should be closed.

## III. ORDER

**IT IS ORDERED:**

- Defendant State of Washington Department of Correction's Motion for Summary Judgment (Dkt. 85) **IS GRANTED;**

- Plaintiff's Motion for Oral Argument (Dkt. 87) **IS DENIED;**

- All Plaintiffs claims are now **DISMISSED**; and

- This case is **CLOSED**.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

Dated this 15th day of January, 2016.

*[signature]*

ROBERT J. BRYAN
United States District Judge